JOSÉ CORDERO SANTIAGO, Plaintiff and Appellee, *v.* ACISCLO LIZARDI CABALLERO ET AL., Defendants and Appellants.

No. CE-62-35. Decided October 3, 1963.

*Ponsa Feliú, Calderón & Souss* for appellants. *Manuel A. Bustelo* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The original source of the liability of those who have not caused the damage directly, in the case of extracontractual fault, is § 1803 of the Civil Code, 1930 ed., 31 L.P.R.A.

§ 5142,[1] derived fundamentally, in certain cases, from the duty of vigilance—the parents,[2] the guardians and the teachers for the acts of their children, minors and pupils —and in others, involving actual fault in the unwise selection of the subordinates—the owners or directors of an establishment or enterprise for the acts of their agents or employees.[3] Already since *Vélez* v. *Llavina*, 18 P.R.R. 634,

---

[1] "The obligation imposed by the preceding section [to repair the damage so done] is demandable, not only for personal acts or omissions, but also for those of the persons for whom they should be responsible."

[2] *Portilla* v. *Ward, Jr.*, 87 P.R.R. 731 (1963); *Álvarez* v. *Irizarry*, 80 P.R.R. 60 (1957); *The Conjugal Partnership, etc.* v. *Cruz*, 78 P.R.R. 335 (1955); *Cruz* v. *Rivera*, 73 P.R.R. 632 (1952); *Pacheco* v. *Pomales*, 55 P.R.R. 333 (1939); *Soto* v. *District Court*, 52 P.R.R. 459 (1938); *Méndez* v. *Casellas*, 47 P.R.R. 509 (1934); *Rodríguez* v. *Santos*, 40 P.R.R. 45 (1929); *Portalatín* v. *Noriega*, 33 P.R.R. 755 (1924); *Nadal* v. *Miranda*, 27 P.R.R. 300 (1919).

[3] In *Responsabilidades Derivadas de Culpa Extracontractual Civil* (Ed. Bosch, 2d ed. 1958), Borrell Macia comments at p. 170 that "from the viewpoint accepted by existing legislation on this matter, in the absence of fault or negligence, there is no duty to indemnify (and as in the case of the liability of the parents and tutors which we have seen was based on the lack of care, vigilance, education, etc.), the grounds— in addition to the fact that in certain cases there may be lack of vigilance —are based on the fact that the employer, owner, director, etc., are under the duty to assure themselves of the conditions of skillfulness, honesty and exaggeration of the persons working under them (*culpa in eligendo*); they should acquaint themselves with the ability of their subordinates so that they may not impose an obligation upon them, nor entrust services beyond their ability, education and conditions, physical, intellectual, scientific, etc.; and it is necessary to exercise due diligence and care in choosing the persons to whom something is entrusted, as a guarantee to the community.

"One is liable for the acts performed in pursuance of the function entrusted, whether the latter is more or less permanent, gratuitous or compensated, provided the relationship or nexus between the person who entrusts the function and the one who performs appears clearly, even though the tortfeasor has acted with negligence which may be termed as rash, or the damage may be the result of having performed, in the course of the service, some act without the authorization of his principal, not necessary nor suitable to the performance of the function entrusted to him; and also—this not being the only and proximate cause of the accident—that he has violated some regulatory provision; however, if he

642–43 (1912), we characterized this liability as an exception because it was in the nature of a punishment, though a civil one, and we held accordingly that it could only be applied when the law specifically so provided. That is why, with the vigorous dissent of Mr. Justice MacLeary, it was held in that case that the owner of an automobile was not liable for the culpable or negligent acts of his employee as operator, unless the vehicle formed part of an enterprise.[4]

The advent of the automobile with the consequent hazards in its operation and driving to life and property created a community problem which called for legislative action. That is why upon the enactment of Act No. 75 of April 13, 1916 (Sess. Laws, p. 140), the first measure which actually attempted to regulate comprehensively everything concerning the use and operation of motor vehicles in Puerto Rico,[5] § 17 was inserted which provided "that the owner of any motor vehicle shall be responsible for damage caused by the

---

performs the act outside his functions—on his own account, even if in pursuance of his commitment—the liability does not fall on the principal.

*"The liability imposed accrues from the fact that the tortfeasor is dependent on or is under the direction of the person subsidiarily liable, and not from the fact that the thing which causes materially the damage is the property of the latter."* (Italics ours.)

Bonet Román, *Código Civil Comentado* (Aguilar, 1962), points out at p. 1507 that "The liability imposed by § 1903 [§ 1803 of P.R.] upon those who are liable for other persons is not subsidiary, but rather direct, as required by the cause giving rise to the liability; and the law establishes the same by reason of the failure to perform the duties imposed by the special relations of authority or superiority existing between the person who must repair the damage and the person causing the damage through his own acts or omissions."

[4] *Truyol & Co.* v. *West India Oil Co.*, 26 P.R.R. 321 (1918); *Méndez* v. *Baldassari*, 28 P.R.R. 571 (1920); *Izquierdo* v. *Andrade*, 39 P.R.R. 848 (1929); *Aponte* v. *Palacios*, 55 P.R.R. 674, 676 (1939); *Antonsanti* v. *M. Rodríguez & Cía., Sucrs.*, 53 D.P.R. 994 (1938); *Casillas* v. *Rengel*, 51 P.R.R. 618 (1937); *Méndez* v. *Blanes, S. en C.*, 47 P.R.R. 384 (1934).

[5] Actually, the legislation prior to 1916 was incomplete and merely speculative. The only provisions on civil liability referred to damages caused to highways. See § 10(1) of Act No. 41 of March 10, 1910 (Sess. Laws, p. 129); § 12 of Act of March 14, 1907 (Sess. Laws, p. 368); § 19 of Act of March 8, 1906 (Sess. Laws, p. 177).

negligence of the operator or chauffeur while such owner is in the vehicle."[6] The civil liability was imposed if the owner was in the vehicle, irrespective of whether or not an enterprise was concerned.[7] This situation subsisted until the enactment of Act No. 55 of April 27, 1942 (Sess. Laws, p. 526), which expressly repealed Act No. 75[8] and did not contain any provision on liability for damages caused in the operation of the vehicle by third persons. In order to correct this omission, the following year the Legislative Assembly enacted Act No. 120 of May 12, 1943 (Sess. Laws, p. 372), which amended § 1803 of the Civil Code adding a provision to the effect that "the owners or proprietors of any motor vehicle used for the private service of its owner or proprietor, are also liable for the damages caused by the operation of same by their employees or agents duly authorized to drive said vehicles, and while they act in the performance of their duties as such employees or agents, in accordance with the terms of their work contract."[9] Fortunately a similar provision was adopted by § 19 of Act No. 279 of April 5, 1946 (Sess. Laws, p. 598), 9 L.P.R.A. § 189, since when § 1803 was amended upon the enactment of the "Act on Claims and Suits Against the Commonwealth," No. 104 of June 29,

---

[6] In *Alicea* v. *Aboy*, 23 P.R.R. 100, decided July 28, 1915, plaintiff sought to distinguish the strict doctrine of *Vélez* v. *Llavina*, 18 P.R.R. 634 (1912), and its inapplicability was upheld on the ground that at the time of the accident the owner of the automobile was in the vehicle. Such position was rejected.

[7] *Torres* v. *Vidal*, 28 P.R.R. 915, 917 (1920); *Morales* v. *Caraballo*, 27 P.R.R. 544 (1919); *Allen* v. *International Express Co.*, 28 P.R.R. 448 (1920); *Heirs of Rodríguez* v. *Umpierre, Jr.*, 44 P.R.R. 160 (1932); *Izquierdo* v. *Andrade*, 44 P.R.R. 706 (1933); *Sánchez* v. *López*, 47 P.R.R. 630 (1934); *Rivera* v. *Mejías*, 62 P.R.R. 1 (1943). *Cf. Pérez* v. *Picó*, 63 P.R.R. 387 (1944).

[8] Act No. 140, enacted on May 6, 1940, incorporated substantially the Uniform Act Regulating Traffic on Highways. This Act only repealed any law or provision in conflict therewith.

[9] The same Act added § 14-A to Act No. 55 of April 27, 1942, drawn up in substantially identical terms.

1955 (Sess. Laws, p. 550); 32 L.P.R.A. (Supp. 1962) § 3077 *et seq.*, the text copied hereinabove was omitted. In construing the scope of this text, we said in *Díaz* v. *Iturregui*, 72 P.R.R. 191, 195 (1951), that "The Legislature recognized that the previous version of § 1803 was not suited to the modern conditions and amended it in 1943. But it did not incorporate in the amended version the broad common law rules of agency on this point. Rather it carefully limited liability to cases where the driver is an employee or agent *acting in accordance with the terms of his contract of work.*"

This brief historical review brings us to the threshold of the important question raised in this appeal: the scope and interpretation to be given to § 13-101 of the present Vehicle and Traffic Law, No. 141 of July 20, 1960, 9 L.P.R.A. § 1751. But first, in view of its importance in the hermeneutical process, it is necessary to make express reference to the facts and to the doctrine reiterated in *Díaz* v. *Iturregui*, 72 P.R.R. 191 (1951); *Usera* v. *González*, 74 P.R.R. 454 (1953); and *Kirchberger* v. *Gover*, 76 P.R.R. 851 (1954).

*Díaz* v. *Iturregui*, 72 P.R.R. 191 (1951): On March 16, 1949, plaintiffs' predecessor was hit by a vehicle owned by defendant Nicolás Iturregui while it was being driven by his daughter Clemencia who was taking her minor sister to school, at defendant's request. We relieved Iturregui from liability stating that his daughter who was of legal age—who admittedly was a school teacher—was not his "agent" or "employee" under a "contract of work," as these terms are employed in § 1803 of the Civil Code. *Usera* v. *González*, 74 P.R.R. 454 (1953): On August 10, 1950, a prospective purchaser of an automobile given him in order to test it was involved in an accident owing to his lack of skill as a driver. We recognized that a bailor who has no control over the manner in which a bailee operates the vehicle ordinarily would not be liable for injuries caused through the latter's negligence in driving, although nonetheless we held him liable

but on the basis of the negligent act of his employee in giving the vehicle to a person whom the agent knew or should know, by his physical appearance, that he had no license or was incompetent. *Kirchberger* v. *Gover*, 76 P.R.R. 851 (1954): We reaffirmed that in the case of a motor vehicle devoted to the private service of its owner, it was necessary to establish that the driver was an agent or employee of defendant owner acting within the scope of his duties as such, pursuant to the terms of the contract of work, in order that the employer or principal be liable for the injuries caused in its operation.[10]

Section 13-101 of the existing Vehicle and Traffic Law, *supra*, reads as follows:

"The owner of a motor vehicle shall be liable for damages and losses caused through guilt or negligence by operation of such vehicle when operated by or in the possession or under the control of any person who, for the main purpose of operating it, or of having or allowing it to be operated by a third person, obtains possession thereof by express or tacit authorization of its owner. In any event it shall be assumed, unless otherwise proved, that any person operating or having in his possession or under his control a motor vehicle has obtained possession thereof with the authorization of its owner for the main purpose of operating it or having or allowing it to be operated by a third person.

"The person for whose negligence the owner of a vehicle is to answer under the provisions of the preceding paragraph shall be bound to indemnify said owner."

A careful reading of the statute will reveal that the controlling basic fact of liability is that *the possession* has been obtained with the express or implied authorization of the owner. So much so that it establishes a presumption in that sense by the mere fact of the operation, although such presumption is of a controvertible character. Does that

---

[10] See *Betancourt* v. *U.S. Fidelity & Guaranty Co.*, 78 P.R.R. 618 (1955); *The Conjugal Partnership, etc.* v. *Cruz*, 78 P.R.R. 335, 339 (1955); *cf. Hernández* v. *De Jesús*, 70 P.R.R. 1 (1949).

mean that the owner of the vehicle may limit the permission as to the manner, the time, the place and the purposes for which it may be used and thereby enervate his legal liability in the event of violation of the conditions under which the permission was granted? Does the unauthorized use of the vehicle relieve from liability? Is any deviation from the use permitted, no matter how insignificant, sufficient to relieve the owner?

■ Appellants contend that the sole purpose of the 1960 provision was to eliminate the agency requirement contained in the former legislation and not to impose liability for the mere fact of the voluntary delivery of the vehicle. However, after a slight examination of the legislative history of the section under consideration, it will be observed that the purpose of the authors of the measure was precisely to guarantee to any person the reparation of the damages caused by the culpable or negligent operation of a motor vehicle whenever the possession thereof was voluntarily delivered by the owner. It will suffice to reproduce here the report of the House Judiciary Committee on H.B. 842,[11] the original purpose of which was to amend § 1803 of the Civil Code by inserting a text similar to the present § 13-101:

"Section 19 of the Automobile and Traffic Act, as it stands at present, limits the liability of the owner of a motor vehicle devoted to the private use of its owner, for the damages caused by the operation of such vehicle by third persons, to those cases in which third persons at the time of the accident act as agents or employees of the owner and are 'duly authorized to operate same while in the discharge of their duties as such employees or agents, in accordance with the terms of the work contract.'

"Your Committee believes that the scope of the liability determined by § 19 of the Automobile and Traffic Act, *supra,* is highly restrictive. A motor vehicle, in the hands of an unskilled or negligent person, is a highly dangerous instrument.

---

[11] XIII Journal of Proceedings 1312–13 (1960). A very similar report was submitted by the Judiciary Committee (Civil), *op. cit. supra* at 2301–02.

The security of the citizens, both as to their person and as to their property, demands that the state adopt all kinds of measures not only to reduce the causes of motor vehicle accidents, the incidence of which is alarming, *but also to provide the right to proper compensation to those who are the victims of such accidents.*

"Under the Act, as it stands today, the owner of a motor vehicle, unconcerned about the risk thereby created to his fellow citizens, may lend his vehicle to a person lacking skill, good judgment, circumspection, or perhaps with defective eyesight or some other physical impairment, without being held liable for such action except when the operator is his agent or employee in the discharge of his duties. *Díaz* v. *Iturregui,* 72 P.R.R. 191; *Usera* v. *González,* 74 P.R.R. 454; *Kirchberger* v. *Gover,* 76 P.R.R. 851. *The situation thus created is even more serious when the vehicle is given to a person who has no economic resources with which to pay for the damages caused.*

"*The due protection to the community requires that the primary liability for the use of the vehicle be imposed upon the owner.* The purpose of H.B. 842 is to amend the rule contained in § 19 of the Automobile and Traffic Act so that the owner of any motor vehicle be liable for the damages caused by its operation, through fault or negligence, when the vehicle is operated or is under the dominion or control of any person who obtains the possession by express or implied authorization of the owner, for the main purpose of operating it, or causing or allowing it to be operated by a third person. It is further provided that in any event it shall be presumed that the person who operates or has under his dominion or control a motor vehicle has obtained the possession thereof with the authorization of the owner for the primary purpose of operating it, or causing or allowing it to be operated by a third person. Naturally, this presumption is of a rebuttable character. Lastly, the bill provides that the person for whose negligence the owner of the vehicle shall answer shall in turn be under the duty to compensate the latter. Your Committee is also of the opinion that it is better and more proper to include this new norm on liability, in cases involving damages caused by the operation of a motor vehicle, as part of § 1802 of the Civil Code rather than as part of the Automobile and Traffic Act. In fact, until 1955 § 1803 contained a provision similar to that contained at present

in § 19 of the Automobile and Traffic Act. In that year, when the Act to Authorize Suits Against the State was enacted, the provision in question was inadvertently repealed, although, as a matter of fact, without any practical consequence since § 19 *supra* remained always in existence.

"Therefore, in amending the provision *supra* the Committee is of the opinion that the proper thing to do is to transfer the same, as amended, to its original source, namely, the Civil Code, repealing simultaneously the corresponding provisions of the Automobile and Traffic Act.

"In the belief that substitute H.B. 842 will remedy a pressing need in our legislation, your Committee has decided to recommend its approval to the House." (Italics ours.)

▪ ■ The key expression of this report is, in our opinion, that which refers to "The due protection to the community requires that the primary liability for the use of the vehicle be imposed upon the owner." We must not forget that this section forms part of a badly needed legislative piece to regulate the traffic. To mitigate the deep concern regarding the alarming proportions of traffic accidents, and to propose a series of measures for the security of life and property, are two important phases of this legislation. *People* v. *Otero Valle, ante,* p. 71. A brief examination of traffic accident statistics[12] will confirm the foregoing:

*Traffic Accidents, Deaths, Injured, and Registered Vehicles*

| Year | Number of Accidents | Deaths | Injured Persons | Registered Vehicles |
|------|--------------------|--------|-----------------|---------------------|
| 1956–57 | 18,377 | 245 | 9,129 | 127,930 |
| 1957–58 | 19,393 | 265 | 9,662 | 140,197 |
| 1958–59 | 22,062 | 274 | 11,125 | 156,563 |
| 1959–60 | 27,244 | 341 | 12,798 | 176,707 |
| 1960–61 | 28,382 | 300 | 13,000 | 202,803 |
| 1961–62 | 31,222 | 351 | 14,608 | 215,889 |

[12] Taken from "Statistical Data—1960–61," a publication of the Puerto Rico Police. The data for 1961–62 appear in Serrano, "*Los Perseguidores de Ambulancias,*" XXIII *Rev. C. Abo. P.R.* 305, 325 (1963).

It may be concluded that the statute was enacted to protect the third party injured by permitting him to recover the damages caused.

On the other hand, it is unquestionable that the expressions in relation to the deviations as to the manner, time, place and purposes of the authorization have arisen under the *respondeat superior* doctrine. It is significant that our own statements on the matter have evidenced consistently a tendency aimed at protecting the injured parties, and that we have imposed liability both in cases in which the operator has departed from the employer's express instructions and in those in which he has acted in a manner which is expressly prohibited. See *Martínez v. U.S. Casualty Co.*, 79 P.R.R. 561 (1956); *Lafontaine v. Municipality*, 79 P.R.R. 548 (1956); *Vázquez v. People*, 76 P.R.R. 556 (1954); *González v. Compañía Agrícola*, 76 P.R.R. 373 (1954); *Quiñones v. Tropical Beverages*, 74 P.R.R. 338 (1953); *Lloréns v. Lozada*, 73 P.R.R. 260 (1952); *Rivera v. Maldonado*, 72 P.R.R. 448 (1951); *cf. Vigio v. Cartagena*, 71 P.R.R. 665 (1950); *Acosta v. Crespo*, 70 P.R.R. 223 (1949); *Díaz v. Rodríguez*, 69 P.R.R. 495 (1949). See, also, annotation, *Consent, Liability and Guilt: A Study in Judicial Method*, 7 Stan. L. Rev. 507 (1955).

The cases cited by appellants refer mostly to interpretations on the effect of the omnibus clause contained in public liability policies. The difference in wording of a typical example of these clauses[13] and of the statutory provision which we are construing shows its inapplicability; in the former, the controlling test is that of the *authorized "use"*; in the statutory provision, it is that of the *authorized "possession"*.

---

[13] Generally it is drawn up in these terms: "With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes the Named Insured and also includes any person while *using* the automobile and any person or organization legally responsible for *the use* thereof, provided the actual *use* of the automobile is by the Named Insured or *with his permission*." (Taken from *The Conjugal Partnership, etc. v. Cruz*, 78 P.R.R. 335, 339 (1955).)

The same distinction appears from a comparison of the statutes of other states[14] and it explains the expressions of the local courts in their construction.

 The only statute we have been able to find which establishes the authorized *possession* as index of liability is § 130 of the Vehicles and Highway Traffic Act of the Province of Alberta, Canada: "In an action for the recovery of loss or damage sustained by a person by reason of a motor vehicle upon a highway . . . a person who is driving the motor vehicle and who has acquired possession of it with the consent, express or implied, of the owner thereof shall be deemed to be the agent or servant of the owner." In construing the scope thereof, the Supreme Court of Alberta pointed out in *Guyton* v. *Lacroix*, 30 D.L.R.2d 488 (1962), that when the owner consents to another person acquiring possession of his motor vehicle, he becomes liable for the damages caused in its operation notwithstanding the consent was given for a limited purpose and the tortfeasor deviated from such purpose. Furthermore, it maintains that the relevant time for testing the acquisition of possession is exclusively the time of resting the acquisition, in the absence of a showing of fraud or duress. See *Porter* v. *Terra Nova Motors, Ltd.*, 25 D.L.R.2d 728 (1960), and *Honan* v. *McLean*, 3 D.L.R. 193 (1953), in which it is said that the determining factor is not the purpose for which the vehicle is used, but rather the manner in which possession was obtained.

 In view of the trend of the statutory provision and the case law, and mindful further of the needs required by an orderly community, we cannot read into § 13-101 the limitations sought by appellants. We therefore hold that,

---

[14] 62A N.Y. Consol., Laws Ann., *Vehicle and Traffic Law*, § 388 (McKinney's); Ann. Calif. Codes, *Vehicle*, § 17150 (West's); Brodsky, *Motor Vehicle Owners Statutory Vicarious Liability in Rhode Island*, 19 B.U.L. Rev. 448 (1939); 21 Minn. L. Rev. 823 (1937); 31 Cal. L. Rev. 572 (1943); 17 So. Cal. L. Rev. 326 (1944); 16 So. Cal. L. Rev. 242 (1943).

according to the present state of the Act, the mere possession, voluntarily authorized, of a motor vehicle is sufficient to impose liability upon its owner.

Applying this norm to the facts of the present case,[15] the judgment rendered by the Superior Court, San Juan Part, on October 17, 1962 will be affirmed.

---

[15] The facts proved, which are pertinent, were determined by the District Court as follows:

"(2) On October 13, 1961, at 10:45 p.m., José Cordero Santiago was operating his Chevrolet automobile at the place known as 'Carretera Vieja, Cupey,' Río Piedras, and upon arriving at the scene of an automobile accident the police ordered the said José Cordero to stop, which the latter did, and a few minutes later his parked car was struck.

"(3) The collision of plaintiff's car was caused by Julio Díaz Fernández while driving his 1952 Chevrolet car, owned by Acisclo Lizardi Caballero.

"(4) At the time of the accident Julio Díaz Fernández was an employee of Caldas & Co., Inc. and had in his possession the said Chevrolet car owned by Acisclo Lizardi Caballero, which was insured under a policy issued to Caldas & Co., Inc., which had sent Julio Díaz Fernández to get the automobile in question which was in a repair shop. On other occasions Julio Díaz Fernández had borrowed the car and taken it home for the evening. On certain occasions Julio Díaz Fernández had taken home at night the trucks of Caldas & Co., Inc. with the latter's consent.

"(5) Since codefendant Julio Díaz Fernández was the trusted man of Caldas y Compañía, he had the car in his possession and was authorized to drive it at the time of the accident.

"(6) As a result of the accident object of this case, José Cordero Santiago's car sustained damages the repairs of which cost four hundred dollars ($400), and plaintiff was deprived of the use of the automobile, having spent $90 on travel fare.

"(7) The accident which gave rise to the case under consideration was due solely to the negligence of Julio Díaz Fernández in the operation of Francisco Lizardi Caballero's automobile."